**STATE OF MISSOURI ex rel. BREWER, County Revenue Collector, v. FEDERAL LEAD CO.**

(District Court, E. D. Missouri, E. D.   May 4, 1920.)

No. 5265.

1. **Evidence** ⬉83(1)—**Presumption that officer qualified on day fixed by statute.**

   Where a bill by a collector of revenue of a Missouri county, who was elected in 1918 for a term beginning the first Monday in March, 1919, was silent as to the precise date at which the collector actually qualified and assumed duties as such, it will be presumed that the collector took his office on the day prescribed by Rev. St. Mo. 1909, § 11448.

2. **Equity** ⬉363—**Motion to dismiss admits matters well pleaded.**

   A motion to dismiss a bill admits all matters and claims set forth which are well pleaded.

3. **Courts** ⬉366(6)—**Where powers of collectors fixed by statute, common-law rules not decisive.**

   Where the power, duties, and authority of collectors of revenue were fixed by the Missouri statutes, neither common-law rules nor decisions of other states are decisive.

4. **Taxation** ⬉568(6)—**Where collector fails to make settlement, bondsman liable.**

   Where collector of revenue fails to make settlement with the county court on the last day of his term, as required by Rev. St. Mo. 1909, §§ 11465, 11467, 11468, and 11474, or fails to make payment on the settlement to the county treasurer, etc., both he and his bondsman become liable under section 11479.

---

⬉For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

**5. Principal and agent ⬤⟶163(1)—Principal may ratify unauthorized act.**

A principal may by ratification become bound by the unauthorized act of an agent, or une act of one who was not, before such ratification, actually the agent of the principal.

**6. Taxation ⬤⟶552½—Where county court accepted a less sum, it impliedly ratified compromise by collector.**

While the collectors of revenue of the several counties in the state of Missouri are without authority under Rev. St. Mo. 1909, § 11429 et seq., to compromise an assessment, and can be relieved of liability under section 11464 only by collecting the tax or by procuring a credit from the county court on return of the delinquent tax list, yet where a collector entered into a stipulation with a taxpayer that the assessment was 27 per cent. too high; and on the collectors' final settlement the county court accepted the proceeds of a judgment obtained pursuant to the stipulation, the county court must be deemed to have ratified the reduction of the assessment, and to have acted under the power conferred by Const. art. 6, § 36, giving the county court jurisdiction to transact all county and other business, and Rev. St. Mo. 1909, § 11492, allowing the county court to correct and reduce assessments; the action of the court amounting to a reduction of the assessment.

**7. Taxation ⬤⟶552½—Where collector without authority lowered valuation, county court may proceed against taxpayer.**

Where the collector of revenue of a Missouri county without authority lowered the assessed valuation, the county court, on the end of his term, may refuse to settle and proceed against the collector and his bondsmen for the full amount of the tax or may, so refusing accept the amount obtained, and thereafter, under Rev. St. Mo. 1909, § 11491, allow the taxes for the succeeding year to become delinquent and then sue for the entire amount or, if the taxpayer has personal property in the county, proceed against the same under section 11461.

In Equity. Bill by the State of Missouri, on the relation of J. Edward Brewer, Collector of Revenue of St. Francois County, Mo., against the Federal Lead Company. On motion to dismiss the bill. Motion granted.

Ben H. Marbury and J. P. Cayce, both of Farmington, Mo., for complainant.

Edward A. Rozier, of Farmington, Mo., Politte Elvins, of Bonne Terre, Mo., and Holland, Rutledge & Lashly, of St. Louis, Mo., for defendant.

FARIS, District Judge. The facts in this case, as these facts are disclosed by the bill of complaint, while somewhat voluminous, are yet in the last analysis fairly simple and fall within a narrow compass. As appears from the face of the bill, by the allegations of which movant is, of course, concluded, these facts run in brief substance thus:

At the September term, 1918, of this court, defendant here, a corporation under the laws of New York, as plaintiff therein, filed in this court an action in equity to restrain one James J. Croke, as collector of the revenue of St. Francois county, Mo., from enforcing against defendant the collection of certain state, county, road, bridge, and school taxes, assessed against the real estate of defendant for the year

⬤⟶For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

1918, and aggregating the sum of $214,401,91, averring that such taxes, the collection of which was threatened to be enforced, were illegal, and therefore uncollectible, except the sum of $100,000, which sum defendant herein then and there tendered and paid into the registry of this court. The court thereupon granted to plaintiff in the injunction suit a temporary injunction, restraining said Croke, as collector of the revenue as aforesaid, from proceeding to enforce against this defendant the collection of the alleged illegal taxes until the further order of the court. Thereafter, and on March 1, 1919, and in the September term, 1918, of this court, Croke, defendant in the injunction suit, answered, admitting all merely formal matters, but specifically denying all allegations and averments making for any errors or illegalities in the assessment and valuation of this defendant's property, and praying, by way of counterclaim, judgment for the sum of $250,850.23, the sum then due for taxes and penalties, as shown by the tax books in the hands of said Croke, collector as aforesaid.

Following the filing of the above answer and counterclaim, and on March 3, 1919, Croke and this defendant entered into and filed in this court a stipulation wherein Croke, defendant therein, in his capacity as collector of the revenue of St. Francois county aforesaid, admitted that the taxes assessed against this defendant for the year 1918 were "discriminatory and excessive" to the extent of 27 per cent. of the assessed aggregate thereof, and that the same ought to be reduced 27 per cent., and thereupon a decree embodying this reduction, but with certain penalties and attorney's fees, was accordingly entered in this court. By the terms of this decree this defendant was adjudged to pay and did pay to Croke, as collector as aforesaid, the sum of $100,000 then in the registry of this court, plus the additional sum of $56,513.39 as taxes, together with $2,150 as statutory penalties and $2,150 as commissions to Croke as collector, and an attorney's fee of $5,375, amounting in the aggregate to the sum of $166,188.39, plus the interest on the sum of $100,000 paid into court, the amount of which interest is not disclosed. By this decree Croke, as collector, and his successors in that office, were perpetually enjoined from enforcing against this defendant the collection of all taxes assessed against it for the year 1918.

[1] J. Edward Brewer, at whose relation the state of Missouri sues as plaintiff in the instant case, was elected collector of the revenue of St. Francois county, Mo., in November, 1918, for a term beginning on the first Monday in March, 1919. Section 11448, R. S. Mo. 1909. The bill of complaint herein is silent as to the precise date at which Brewer actually qualified and assumed his duties as such collector. Absent such allegation, it will be presumed that relator took over this office on the day prescribed by statute. Brewer, collector as aforesaid, as relator, filed the instant action in this court on February 20, 1920, to set aside the decree which was entered by this court on the 4th day of March, 1919, and as ancillary thereto and for further relief therein to enforce against the defendant the collection of the full sum of $214,401.91 as taxes for the year 1918, together with all accrued interest and penalties, amounting when this suit was filed to

$250,850.23, less the sum of $151,813.39, paid, it is alleged, by defendant pursuant to the decree of this court on March 19, 1919.

Relator bottoms his right to set aside such decree on the general allegation that the acts of Croke, his predecessor in the office of collector, in entering into the stipulation pursuant to which the decree was made in this court, were "fraudulent and void." This general allegation is eked out by the averments that Croke had no authority under the laws of Missouri to settle or compromise the injunction suit, or to enter into the stipulation above mentioned, or to consent to a decree for any sum less than that shown by the tax books in his hands as collector; that there are provided by applicatory statutes of the state of Missouri a county board of equalization and a state tax commission, in which is vested the sole power to adjust and equalize taxes; that by entering into the said stipulation Croke, as collector, and this defendant, unlawfully and wrongfully deprived the said board of equalization and the state tax commission of their lawful statutory powers of adjusting and equalizing the taxes assessed against defendant; that it was not true, as conceded in the stipulation signed by Croke, that the assessment against this defendant was discriminatory and unjust; and that this court was not advised of the true facts when it entered the decree here sought to be set aside. Thus, in fair substance, run the whole of the allegations of fraud and of a meritorious defense to the action wherein the decree here attacked was entered.

Barring the inference from an offer, contained as well in the body of the petition as in the prayer for relief, to credit defendant herein with all payments made by it to Croke as collector, as aforesaid (except the sum of $5,375 paid to Croke's attorneys, which is not mentioned), there is no direct admission that St. Francois county ever got the $161,813.39 paid to Croke under the decree of March 4, 1919; nor, save this, is there any offer to pay the latter sum into court, nor is there any other tender, or offer to do equity.

Defendant filed its motion to dismiss the bill (among other grounds, either not well taken or duplicated in substance), for that (a) the bill sets up no ground for equitable relief; (b) that plaintiff has not done equity, nor offered to do equity; (c) that there is no allegation that the taxes sued for as ancillary relief here are delinquent, or were ever returned delinquent by Croke as collector; (d) that there is a defect of parties defendant, in that Croke is not made a party herein; (e) that it appears on the face of the bill that Croke, as collector, had the authority to compromise the suit against him; and that his action in that behalf was legal and binding on the county of St. Francois.

[2] I consider the case, therefore, upon the motion to dismiss, which admits all matters and things set forth in the petition which are well pleaded. In doing this I am of opinion that it will not be necessary to consider all the points which I reserve above as being possibly debatable.

[3-6] Taking the last point first, and considering it literally, but in connection with the first point, I think there can be scant doubt that Croke had no authority to compromise with defendant by accepting a less amount as taxes due from the defendant than the actual sum

shown by the tax books in his hands as collector. The duties of Croke as collector are defined and prescribed by the statutes of Missouri, which create the office of collector of revenue of the several counties in the state of Missouri (section 11432, R. S. Mo. 1909; State v. Herring, 208 Mo. 708), 106 S. W. 984, and which prescribe the duties of such collectors (sections 11429, 11434, 11440, 11445, 11448, 11450, 11456, 11459, 11460, 11461, 11464, 11465, 11466, 11467, 11468, 11469, 11473, 11474, 11475, 11477, 11478, 11479, and 11480, R. S. of Mo. 1909). Since, therefore, the office is of statutory origin (State v. Herring, supra), neither the common-law rules, nor the decisions of other states, touching the powers, duties, and authority of collectors of state and county revenue in such states, are decisive. Section 11429, R. S. Mo. 1909, cited supra, provides that upon the delivery of the tax books to the collector he is to be charged with the full amount of the taxes shown upon such books. He can be relieved from liability only (a) by collecting such taxes, or (b) by procuring credit from the county court of his county upon a return of a delinquent list pursuant to statute. Section 11464, R. S. Mo. 1909, supra. To the end that the collector may be relieved, upon the performance of either one or the other of the above contingencies, annual settlements with the county court are required. These settlements, to distinguish them, perhaps, from the "monthly statements" and the monthly payments also required to be made by the collector (section 11473, supra), are called "final settlements" in the statutes (section 11465, supra).

The policy of the state of Missouri, as expressed in the decisions of the Supreme Court thereof, is clearly opposed to the view that any officer, such as a collector, can bind the county, save and except by such performance of incumbent duties as is prescribed by statute. Lamar Township v. City of Lamar, 261 Mo. 271, 169 S. W. 12, Ann. Cas. 1916D, 740; Mullins v. Kansas City, 268 Mo. 444, 188 S. W. 193; Ex parte Tartar (Mo.) 213 S. W. 94. There seems to be no Missouri statute conferring power on the collector to take a less sum in payment of the taxes charged to him on the tax books than the amount of such taxes as shown by such tax books. At least the diligence of counsel has disclosed none such, and after a diligent search, aided by some prior knowledge of the subject, I have been unable to find any such statute. Neither is there any statute in existence which expressly places authority on a county court of Missouri to compromise taxes as such, and which have been levied and assessed and made up into a tax book, in a case such as is here before me. County courts in Missouri are empowered to compromise back taxes, when the lands against which such taxes have been assessed are not worth the taxes assessed thereon (section 11496, R. S. Mo. 1909); to refund taxes collected on an illegal levy, provided the fact of such illegality has theretofore been judicially determined by the Supreme Court of the state (section 11523, R. S. Mo. 1909); to correct erroneous assessments, for that the lands were not subject to taxation, or were assessed twice for the same years, or assessed to two different persons (section 11522, R. S. Mo. 1909). None of the above statutes, it is obvious, applies to the situation here presented.

There is a statute, however, which confers upon the county courts of the several counties of Missouri plenary authority to either raise or lower assessed valuations upon property, which lowering of valuations will have the inevitable effect to lower the amount of taxes due thereon. This section reads as follows:

"*Errors in Tax Books may be Corrected, When.*—In all cases where the county court, or assessment board, or any city council or assessment board, shall have assessed and levied taxes, general or special, on any real estate, according to law, whether the same be delinquent or otherwise, and until the same are paid and collected, with all costs, interest and penalties thereon, the city council of any city and the county court of any county shall have the full power to correct any errors which may appear in connection therewith, whether of valuation, subject to the provisions of the Constitution of this state, or of description, or ownership, double assessment, omission from the assessment list or books, or otherwise, and to make such valuations, assessment and levy conform in all respects to the facts and requirements of the law. Any description or designation of property for assessment purposes by which it may be identified or located shall be a sufficient and valid description or designation." Section 11492, R. S. Mo. 1909.

It will be noted that the section of the Missouri statutes above quoted confers authority upon the several county courts to raise or lower valuations and to correct errors, "subject to the provisions of the Constitution of the state." Without going into other of the exceptions and limitations of the Missouri statutes touching matters not here relevant, it seems obvious that the power conferred on the several county courts by the section of the statutes, supra, is derived from section 36 of article 6 of the Constitution of Missouri, which, so far as pertinent, reads thus:

"In each county there shall be a county court, which shall be a court of record, and shall have jurisdiction to transact all county and such other business as may be prescribed by law."

It is also obvious that the above constitutional provision, in conferring upon the county courts of the several counties power to transact "all county business," has the effect of making such county courts the general agents of the counties. If this view is correct, it is clear that the above statute and the constitutional provision above quoted have a very important bearing upon the issues presented in this case. For, absent some statutory inhibition, and I know of none, and subject to some prohibitions of the Constitution of Missouri not here relevant, the county courts are authorized to deal with all county business just as any other general agent of an individual principal might do.

It is true that the county court of St. Francois county did not, by any explicit order made by it to that identical effect, lower the assessed valuation of the property of the defendant. The collector, however, without any statutory authority, as I have tried to show, stipulated in the former case that the assessment was 27 per cent. higher on the property of the defendant than it lawfully ought to have been. In effect, then, the collector lowered this valuation, and I think that the county court ratified the act of the collector in so doing, as I think it had a right to do, pursuant to the statutes which I have quoted, and

pursuant to the authority conferred on it by the Constitution in making it the general agent of the county for the transaction of all county business. For it must be presumed that the county court made a final settlement with this collector on Monday, the 3d day of March, 1919. While there is no explicit allegation of such a settlement, the statute then and now in force required the making of such settlement and required the payment thereupon to the county treasurer for the county, and to the state treasurer of the state, of the money collected by him. Sections 11465, 11467, 11468, 11474, R. S. Mo. 1909. If the collector failed to make such a settlement, or failed to make payment thereupon to the county treasurer for the county, and to the state treasurer for the state, of all moneys collected, he became liable to be sued on his bond by either the state or the county, or both, according as to whether the failure to pay was as to state or county funds. Section 11479, R. S. Mo. 1909.

However, the bill of complaint herein, in obvious effect admits that the collector paid into the statutory custody the moneys received by him pursuant to the stipulation and the consent decree. This admission, I think, sufficiently appears from the offer made by plaintiff in this case to credit such payment on the amount of taxes now alleged to be due from defendant. It follows, therefore, that there is no necessity to resort to any presumptions about this matter. If the collector did not pay the money received by him pursuant to this consent decree to the state treasurer and to the county treasurer, and lay before the county court the receipts of such treasurers as the basis for his settlement with the county court, then a suit will lie against him and his sureties upon his official bond. Clearly the county court here either ratified by its subsequent action, or inaction, the unauthorized act of the collector in lowering this valuation, or it did not ratify that act. If it did not ratify such act, then it ought to have brought suit against the collector on his bond, and it follows that this action will not lie.

I am of opinion, then, that the taking of this money from the county collector by the county court, in the mode stated, had the legal effect to ratify upon the part of St. Francois county that which the collector had theretofore done without authority. Persuasive toward this view is the somewhat analogous case of St. Louis, etc., Railroad Co. v. Anthony, 73 Mo. 431. For I repeat, while the collector had no authority to stipulate that the valuation of the defendant's lands was erroneous, the county court, perforce the provisions of section 11492, supra, did have such authority. That court could act in such behalf either directly, by themselves making an order to reduce the valuation by 27 per cent., or indirectly, by approving, in their settlement with the collector, his act in so reducing this valuation, by the proportion named. It took the latter course. It accepted the fruits of this valuation, or revaluation, as made by the collector, and kept and still keeps the money of defendant, paid by it pursuant thereto. The case on this phase practically resolves itself into the simple legal proposition that a principal may, by ratification, become bound by the unauthor-

ized act of an agent, or by the act of one who was not before such ratification actually the agent of the principal.

[7] Clearly, when the collector, without legal authority so to do, lowered the valuation as assessed against the property of defendant, two courses were open to the county court. When Croke, the collector, made his final settlement with the court as by law he was required to do in March, 1919, it could either (a) have refused to settle with him, and have refused to accept the money which came into his hands pursuant to his unauthorized revaluation of defendant's lands, and, so refusing, have thereupon sued him on his bond; or (b) so refusing to accept such money, have credited him with the full amount of the taxes as delinquent, and thereupon have waited till the taxes due from defendant had continued delinquent for the period of one year, and then brought suit against the defendant for the total sum shown to be due from defendant by the back tax books of the county. Section 11491, R. S. Mo. 1909. This, of course, upon the assumption that defendant had no personal property out of which by summary distraint the taxes on its real property could have been collected. If it had such personal property in St. Francois county, then the collection of all taxes on its real property could have been at once made by the incoming collector. Section 11461, R. S. Mo. 1909; State ex rel. v. Snyder, 139 Mo. 549, 41 S. W. 216. But the latter method becomes, of course, merely academic in the discussion, since there are no facts alleged in the bill of complaint on which to bottom it.

Other points, some of them serious and of substance, it may be, are urged against the right of plaintiff to maintain this action. Some of these points are obviously such as may be cured by amendment. Others of them, as forecast, may possibly wholly preclude plaintiff's recovery. Deeming that the point above discussed disposes of the case, no occasion arises why these views should be lengthened by a discussion of any of the other points which have been raised by the defendant's motion to dismiss the bill.

It follows, for the reasons given above, that the motion to dismiss the bill of complaint should be sustained; and it is so ordered.