JIMMIE FRATERRIGO and TOM GREEN, v. STATE OF FLORIDA.

10 So. (2nd) 361                                    Division B
October 30, 1942

Wm. C. Pierce, for appellants.

J. Tom Watson, Attorney General, Millard B. Conklin, and Woodrow M. Melvin, Assistant Attorneys General, and Kenneth Ballinger, Special Assistant Attorney General, for appellee.

THOMAS, J.:

In an information Jimmie Fraterrigo and Tom Green, appellants, were accused of (1) maintaining a gambling room, and (2) allowing divers persons to play games of chance in it. In the third count of the same information nine other people were charged with gambling. The jury found Fraterrigo guilty under both counts, Green guilty under the second count and the remaining defendants not guilty.

It was developed by the testimony that Fraterrigo operated a beer and cigar store on Lafayette Street in the City of Tampa. In the rear was a large room which was accessible from the store and an alley. A deputy sheriff entered the alley about nine o'clock in the nighttime and, from a vantage point, observed six men sitting at a table in the back room "gambling, changing money and throwing cards on the table, and picking up money." This room was fitted with two or three tables but at the time only one of them was being used for gaming. The place was operated by Fraterrigo but he was not present on any occasion during the period covered by the testimony of the witnesses.

After watching for a short while the deputy returned to the sheriff's office where he was joined by seven or eight other deputies and all of them immediately went back to Fraterrigo's for the purpose of making a search. The visit of the first deputy had been preceded by one from two of his associates and they, too, while standing in the alley, had watched poker being played in the room. When the group reached Fraterrigo's store three of them went to the rear door of the building, while the others went into the shop and as they entered the appellant Green, who was standing at a counter near the entrance, gave a signal on an electrical device, warning those who occupied the room that they were in danger. When the occupants ignored the request of the officers to be admitted the latter forced open the door which was heavily braced and within they found money and cards. The table occupied by the players at the time they were observed by the deputy sheriff was equipped with a slot in the center and a receptacle underneath.

It was positively stated that a person described as the "houseman," or representative of the operator, took money from the wagers as the game progressed and dropped it through this slot. This was the operator's share as payment for the use of the room and equipment.

The officers were not armed with a warrant of any kind at the time they made their observations, forced their way in or arrested the defendants.

The maintenance of a gambling room is a felony. Chapter 7657, C.G.L. 1927 (now Section 849.01, Florida Statutes, 1941). Under Section 15, Criminal Procedure Act (901.15, Florida Statutes, 1941) and under Section 19 (901.19) the forcible entry in the circumstances seems to have been justified.

From a careful examination of the transcript we are convinced of the abundance of a testimony from which the jury could have concluded that a game of chance was actually in progress and that a part of the wagers was being taken by a representative of the owner as a payment for the illegal use of the property. No anomaly resulted from the verdict finding the players themselves not guilty because it may well have been that the jury was not satisfied from the testimony with the identity of these individuals and was not convinced beyond a reasonable doubt that each of the persons charged was actually a participant in the game.

The brunt of the appellants' attack upon the judgment is based on the failure of the officers to have a search warrant at the time they entered the premises and seized the money and cards. For their position we find little support. There is no need to elaborate on the many decisions of this Court interpreting the

constitutional inhibitions against unlawful searches and seizures because, regardless of the authority given by the statute, the appellants' objections to evidence claimed to have been improperly obtained were not seasonably made. It has been decided by this Court, Robertson v. State, 94 Fla. 770, 114 So. 534, that a defendant waives his insistence upon competent testimony if he fails to make timely objection and it was held there that this rule applies even though a motion was made to suppress the evidence prior to the trial. There are reflected in the transcript only four instances where counsel for the defendant (who do not represent the appellant in this appeal) drew the attention of the court to the search now claimed to have been illegal.

During the examination of one of the deputy sheriffs, who had testified that he was on his way to an adjoining pool room at the time he passed the rear of the defendant Fraterrigo's place of business, the witness was asked, "What did you see as you went?" and counsel for the defendants interjected, "we reserve the right to object to this question until this issue of illegal search has been brought out." Thereupon, the witness was permitted to state, without any further objection, that gambling was in progress in the rear room at Fraterrigo's place of business. Obviously, by this statement the matter of the admissibility of the evidence obtained in the search was not presented to the court for a decision. On the second occasion the state offered certain pictures of the premises in evidence and counsel stated, "They are objected to, on the ground that it was an illegal search and seizure, and ask the court to reserve ruling on this objection." No further attempt was

made to place the photographs in evidence; consequently, this incident may be disregarded. The third reference occurred when the defendants had rested their case and counsel for Fraterrigo moved "the Court to instruct the jury to bring in a verdict of not guilty on the ground, if your Honor please, as pertaining to my client that there has been an unlawful search and seizure . . ." This was not the proper method of securing a ruling of the court on the matter of the admissibility of the challenged evidence. That should have been done when the testimony was offered. Under the statute, Section 213, Criminal Procedure Act (918.08, Florida Statutes, 1941) a motion for a directed verdict raised another question, namely whether, at the close of the evidence . . . the court [was] of the opinion that the evidence [was] insufficient to warrant a conviction . . .' " In view of what had theretofore transpired in the trial of the case the motion was not an appropriate method of presenting the point upon which the defendants relied.

The last notation in the record quotes the prosecutor as saying, at the conclusion of all the testimony, "I want to renew the State's offer to have admitted in evidence the money and the cards, as State's exhibits." There follows, "(Objection by counsel for defendants.)" This objection was wholly insufficient because no grounds whatever were stated to support it or defeat the efforts of the state to have the property become part of the evidence in the case. In the interim witnesses, without any objection by the defendants because of the origin of their testimony, had detailed the illegal use of these commonplace articles.

It was long ago decided by this court that "general objections to evidence proposed, without stating the precise grounds . . . are vague and nugatory, and are without weight before an appellate court, unless the evidence objected to is palpably prejudicial, improper, and inadmissible for any purpose or under any circumstances." Putnal v. State, 56 Fla. 86, 90, 47 So. 864; Flores v. State, 72 Fla. 302, 73 So. 234. The evidence in this case, in all the circumstances, did not fall within the exception and we have the view that the court acted with propriety in giving a ruling adverse to the appellants.

It is our opinion that there was ample evidence to support the verdict of guilty and that the trial court committed no reversible error, therefore, the judgment is—

Affirmed.

BROWN, C. J., TERRELL and CHAPMAN, JJ., concur.